IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| DONALD W. GODARD, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 210354N |
| | ) | |
| v. | ) | |
| | ) | **ORDER DENYING PLAINTIFF'S** |
| DEPARTMENT OF REVENUE, | ) | **MOTION FOR SUMMARY** |
| State of Oregon, | ) | **JUDGMENT AND GRANTING** |
| | ) | **DEFENDANT'S MOTION FOR** |
| Defendant. | ) | **SUMMARY JUDGMENT** |

Plaintiff appeals Defendant's assessment for the 2018 tax year. The parties agreed to submit this matter to the court on cross motions for summary judgment.

## I. STATEMENT OF FACTS[1]

Plaintiff purchased "the Hansen Lodge" in December 2017. (Compl at 4.) At that time, the lodge was "80 years old and minimal maintenance had been performed * * *. It needed to be 'improved' to be attractive in the B&B marketplace." (Compl, Ex 2 at 1.) As of January 2018, the lodge "was furnished, utilities were provided and minor maintenance [and] repairs were made." (Compl at 4.) Plaintiff alleges that it "could have been rented" then but he wished to improve the "south suite first." (*Id.*) He decided "to forego some short term revenue to make improvements in expectation of greater long term revenues" so he "alternately made improvements then hosted guests throughout 2018, 2019 & 2020." (*Id.*) Plaintiff prioritized improvements based on what was most important to guests to avoid bad reviews, though he also wanted the lodge operational as soon as possible for tax deductions and depreciation. (*Id.*)

---

[1] The parties did not file stipulated facts, instead relying on allegations and exhibits. Although it does not appear that parties disagree on any material facts, the court must make fact findings based on the parties' filings. In that respect, the court considers this order a ruling on the written record without witness testimony.

Between January and May 2018, Plaintiff hooked up the utilities, performed plumbing and electrical maintenance, made significant improvements and repairs, moved in furniture, and supplied the kitchen. (Compl, Ex 2 at 2-3.[2]) He applied for a B&B permit from the City of Seaside in January 2018 and received approval in May 2018. (*Id.* at 3-4.) Plaintiff solicited guests by word of mouth, including neighbors, family members, book club members, friends, a pub owner, and a realtor. (Compl at 3, 6; Def's Ex C.) Plaintiff's adult children rented the B&B over Memorial Day 2018 and paid fair market rent. (Ptf's Mot Summ J at 1, Compl Ex 1 at 3.) Plaintiff "had no experience as an innkeeper" so he chose

> "to host the first guests after improving the south bedroom in the spring, get feedback then take on the bathrooms in the summer and again get additional feedback before taking on the kitchen/dining area during the fall and winter. [He] relied upon [his] adult children to be the first guests as [he] could trust [their] honest, constructive and discerning feedback from the perspective of a younger generation."

(Compl, Ex 2 at 1-2.)

Plaintiff "idled" the lodge during the summer of 2018 to make improvements to the bathrooms. (Compl at 4.) Between June and September 2018, Plaintiff laid new flooring, performed work on walls and ceilings, added window blinds, added or upgraded bedroom furnishings, upgraded 3.5 bathrooms, and installed new cabinets and counters. (Compl, Ex 1 at 3-6.) Those improvements "essentially turned the B&B into a construction site." (Def's Ex B at 8.) Plaintiff's adult children rented the lodge over Labor Day 2018, again paying a fair market price. (Compl at 4, Ex 1 at 3.) Plaintiff then "idled" the lodge for a second time during the fall of 2018 to improve the kitchen and dining room. (Compl at 4.) Between September and December 2018, he performed additional work on the bathrooms and upgraded the kitchen and dining room, which included removing a wall,

---

[2] *See also* Def's Ex B (both documents are Plaintiff's "activity log").

installing new windows, upgrading the electrical system, and installing new cabinets, shelving, counters, appliances, and fixtures. (Compl, Ex 1 at 6-8.)

Plaintiff continued to work on the lodge during the first few months of 2019. (Compl at 4.) He listed the lodge for rent on Airbnb and VRBO in March 2019, renting to unrelated guests beginning in June 2019.[3] (*Id.*; Def's Mot Summ J at 2, Ex A at 2.) Plaintiff rented the lodge to numerous unrelated guests between June and November 2019. (Def's Ex D (guest log).)

Plaintiff maintains that he placed the lodge in service in May 2018 when he first rented it to paying guests and is entitled to claim depreciation for the 2018 tax year. (Compl at 3-4.) Defendant disagrees, concluding it was not placed in service until March 2019 when Plaintiff began advertising online. (Compl, Ex 1 at 3.) Defendant further determined that Plaintiff's B&B rental activity was in a start-up phase in 2018, and therefore Plaintiff's expenditures during that year must be capitalized instead of deducted as regular business expenses.[4] (*Id.* at 4-5, citing IRC section 195.) Plaintiff agrees that start-up expenditures should be capitalized but disagrees on the date that the B&B transitioned from its start-up phase to ongoing business. (Ex H at 4.) Defendant did not initially know that Plaintiff received $800 rent in 2018, so it added that as "other income" for 2018. (Exs F, G.)

## II. ANALYSIS

The issue presented is whether Plaintiff may claim a depreciation deduction on the lodge under IRC section 167 for the 2018 tax year. (*See generally* Ptf's Compl and Mot Summ J.) As discussed below, a threshold issue is whether the lodge was used in a trade or business or held

---

[3] In correspondence between the parties, Plaintiff states that he "began" advertising the lodge for rent in March 2019 when he listed it on Airbnb. (Ex A at 10.)

[4] Plaintiff's claimed expenditures totaled $35,395, including $3,817 for auto and travel; $6,115 for cleaning and maintenance; $3,631 for insurance; $4,414 for legal and other professional fees; $13,401 for supplies; and $4,017 for utilities.

for the production of income in 2018, one of which is required to deduct depreciation. In the alternative, Plaintiff argues that he is allowed a depreciation deduction on the lodge as a "personal activity" under Treasury Regulation section 1.167(a)-11(e)(1)(i). (Ptf's Reply at 8-9.)

As the party seeking affirmative relief, Plaintiff bears the burden of proof by a preponderance of the evidence. *See* ORS 305.427.[5] A preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [his] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265 (1990).

The Oregon legislature intended to "[m]ake the Oregon personal income tax law identical in effect to the provisions of the [IRC] relating to the measurement of taxable income of individuals, * * * modified as necessary by the state's jurisdiction to tax and the revenue needs of the state[.]" ORS 316.007(1). In general, terms have "the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined * * *." ORS 316.012. On the issues presented, Oregon has made no relevant modifications, so the court looks to the IRC and its administrative and judicial interpretations. *See* ORS 316.032.

A.     *General Requirements to Deduct Depreciation; Property Used in Trade or Business*

IRC section 167(a) allows a depreciation deduction for the "exhaustion, wear and tear" of property used in a trade or business or held for the production of income. Plaintiff maintains that the lodge was used in his B&B business in 2018. However, Defendant concluded that business was in a start-up phase in 2018 and did not commence until 2019 when Plaintiff began advertising the lodge online and hosting unrelated guests. Based on that conclusion, Defendant determined that Plaintiff's

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

expenses for the 2018 tax year must be capitalized. Plaintiff did not explicitly challenge that conclusion but appears to implicitly challenge it through his claim to deduct depreciation.

Consistent with IRC section 167(a)(1), courts have disallowed a depreciation deduction where taxpayer did not engage in a trade or business. In *Simonson v. US*, 752 F2d 341 (1985), taxpayers purchased a truck and trailer to haul grain but ultimately decided not to enter the grain hauling business due to economic changes. Even though "the truck and trailer were ready to be placed into service on the date of purchase" the court disallowed the depreciation deduction because taxpayers "never entered the grain hauling business, or used the truck and trailer in any other commercial enterprise." *Id.* at 341, 343. With respect to the regulation defining when an asset is placed in service, the court explained that it "'answers the question of when a taxpayer *who is in business* may begin to depreciate an asset.'" *Id.* at 342-43 (quoting *Richmond Television Corp.*, 345 F2d 901, 902 n 12 (4th Cir 1965) (emphasis in original)); *see also McManus v. Comm'r*, 54 TCM (CCH) 475 (1987) (quoting *Richmond Television*, 345 F2d at 907) (disallowing taxpayer's depreciation deduction because the business had not "'begun to function as a going concern and performed those activities for which it was organized'").

In order for Plaintiff to deduct depreciation on the lodge in 2018, he must establish that the lodge was used in a trade or business in 2018, or held for the production of income.

B.    *Whether Plaintiff's B&B Business Began in 2018*

"[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." *Comm'r v. Groetzinger*, 480 US 23, 35, 107 S Ct 980, 94 L Ed 2d 25 (1987). "To determine whether the activities of a taxpayer are 'carrying on a business' requires an examination of the facts in each case." *Higgins v. Commissioner,* 312 US

212, 217, 61 S Ct 475, 85 L Ed 783 (1941).

> "[E]ven though a taxpayer has made a firm decision to enter into business and over a considerable period of time spent money in preparation for entering that business, he still has not 'engaged in carrying on any trade or business' within the intendment of section 192(a) until such time as the business has begun to function as a going concern and performed those activities for which it was organized."

*Richmond Television*, 345 F2d at 907.

Expenses incurred before the trade or business has begun within the meaning of IRC section 162 are considered start-up or pre-opening expenses. *See Johnsen v. Comm'r*, 794 F2d 1157, 1162, 1163 (6th Cir 1986); IRC §195. Such expenses are typically capital in nature, such as to create or acquire an asset. *See Briesmeister v. Dept. of Rev.*, TC-MD 180319N, 2019 WL 1300550 (Or Tax M Div Mar 19, 2019) (discussing the pre-opening expense doctrine in detail). Courts often examine the nature of the expenses, considering whether they are "'the type incurred in the normal operation of the' business and that 'produced benefits to the corporation within the same tax year.'" *Id.* (quoting *U.S. v. Manor Care*, 490 F Supp 355, 362 (D Md 1980)).[6]

Plaintiff claims the lodge was "ready and available" for use in May 2018. (Ptf's Reply at 10.) He identifies the following evidence to support that conclusion: 1) Plaintiff began word-of-mouth solicitation in April 2018; 2) the city issued a permit allowing the B&B to operate in May 2018; and 3) paying guests first stayed in May 2018. (Compl at 3; Ex H at 5.) Defendant argues that the lodge was not in "a state of readiness and availability" during 2018 and should therefore not be considered "placed in service" for depreciation purposes. (Def's Mot Summ J at 3.) Although the parties focused narrowly on whether the lodge was placed in service, the court considers those arguments more broadly as whether the B&B activity had begun.

---

[6] Here, the court received limited evidence concerning Plaintiff's 2018 expenses – only category totals identified in Defendant's Notice of Deficiency. Without knowing more about the specific expenses incurred, it is difficult to draw any conclusions about whether the expenses were ordinary or capital in nature.

The fact that Plaintiff received a permit to operate the B&B supports his claim that the business had begun operations.[7] *See Richmond Television*, 345 F2d at 907 (FCC license was essential to the beginning of taxpayer's broadcasting business). Similarly, the fact that Plaintiff hosted paying guests in 2018 also helps his claim. Those paying guests were family members, which often indicates a rental was not made for profit, particularly if the rent was below a market rate. *See, e.g., Jasionowski v. Comm'r*, 66 TC 312 (1976) (disallowing loss deduction for property leased below market to a family friend); *Eisenstein v. Comm'r*, 37 TCM (CCH) 441 (1978) (limiting rental expenses to the extent of rental income because taxpayer rented condo to parents at below market rent). Here, however, Plaintiff alleged that the rental rate was at fair market value and Defendant did not dispute or rebut that allegation.

Several other facts indicate that Plaintiff had not begun operating his B&B business in 2018. First, the lodge required extensive improvements before it could be fully utilized in Plaintiff's business. In *Williams v. Comm'r*, 53, TCM (CCH) 1203 (1987), taxpayers purchased a building to be used in a muffler installation and auto repair business, but the building required "extensive refurbishing" before it could be fully utilized in the business. Even though taxpayers "did some auto repair work while the improvements were in process," the court concluded the building was not "placed in service" until "the refurbishing was complete." *Id.* At that time, taxpayers held a "grand opening, * * * after which [they] began to regularly service customers and sell products." *See also Noell v. Comm'r,* 66 TC 718 (1976) (runway in "a stage of

---

[7] Plaintiff cites *Stine, LLC v. United States ex rel. IRS*, 115 AFTR2d (RIA) 2015-637 (WD La Jan 27, 2015) in support of his contention that the permit indicates a "placed in service" date of May 2018. In *Stine*, the court agreed with taxpayer that a limited certificate of occupancy allowing personnel, though not the general public, to work inside a retail building for the purpose of preparing for the business's opening established the date that the building was placed in service. The certificate established "that the buildings were substantially complete" and the court found the buildings were "fully functional to house and secure shelving, racks and merchandise." *Stine* is distinguishable both because it involved an established business – "a retail operation that among other things sells home building material and supplies" – and because the buildings were complete.

construction" was "not 'in a condition or state of readiness'" notwithstanding the fact that a few planes landed on it; the runway "was simply not available for full service").

Similar to *Williams,* Plaintiff's lodge was not available for use as a B&B during the majority of 2018 due to the extensive work that Plaintiff performed to repair and improve the lodge, including after each of the two guest rentals. The work performed was beyond routine maintenance required of an active B&B rental business. Rather, it was consistent with capital improvements undertaken to prepare the property for use in a future business. Plaintiff replaced flooring, cabinets, counters, windows, appliances, and fixtures. He moved a wall, upgraded the electrical system, and improved bathrooms, bedrooms, the kitchen, and dining space. Plaintiff described the lodge as a "construction site" during the summer of 2018. (Def's Mot Summ J, Ex B at 6.) Two weekend rentals in 2018 are not sufficient to conclude that Plaintiff had begun an active B&B rental business given the extensive improvements ongoing at the lodge during 2018.

Second, Plaintiff's efforts to rent the lodge in 2018 were not diligent and bona fide because he limited advertising to friends and family by word of mouth. *See Redisch v. Comm'r*, 109 TCM (CCH) 1493 (2015) (finding against taxpayer based on agent's "minimal" efforts to rent: featuring it in a portfolio in the company office and showing it as a model to prospective buyers).[8] Plaintiff successfully rented the lodge on numerous occasions in 2019 by advertising online. Plaintiff's limited advertising in 2018 indicates that he was not yet ready to begin his B&B business. Rather, he was improving the lodge to command more rent in the long-term.

---

[8] By contrast, diligent and bona fide efforts to rent a property indicate a profit motive even where those efforts are ultimately unsuccessful. *See Robinson v. Comm'r*, 2 TC 305, 307 (1943) (finding for taxpayer based on "diligent efforts" of two real estate firms, even though house was not rented or sold during two tax years at issue); *Sherlock v. Comm'r*, 31 TCM (CCH) 383 (1972) (finding for taxpayer despite failure to secure a rental for two years because offer to rent made through real estate broker was bona fide and on reasonable terms); *Foster v. Comm'r*, 60 TCM (CCH) 466 (1990) (finding for taxpayer who listed condo for rent through a real estate agent, even though condo was vacant for two years).

The court agrees with Defendant that Plaintiff had not yet begun his B&B business in 2018. Thus, the lodge was not eligible for depreciation that year because it was not used in a trade or business. Even if the court were to find that Plaintiff's B&B business had begun in 2018, the lodge was not ready and available for use in that business in 2018 due to the extensive improvements required that rendered the lodge a construction site for most of the year. The two weekend rentals are insufficient to conclude that the lodge was fully utilized.

C.      *Whether Plaintiff's Lodge was Held for the Production of Income*

Having found that Plaintiff's B&B business had not yet begun in 2018, the next question is whether Plaintiff held the lodge for the production of income in 2018, in which case Plaintiff could claim depreciation under IRC section 167(a)(2). Individuals may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year * * * for the management, conservation, or maintenance of property held for the production of income[.]" IRC § 212. This section encompasses rental property where taxpayer's predominant purpose is to realize a profit from the property. *See Bolaris v. Comm'r*, 776 F2d 1428, 1432 (9th Cir 1985.)

The parties did not focus any of their briefing on this issue given Plaintiff's intent to use the lodge in a business rather than to hold it for the production of income. Because Plaintiff did not make diligent and bona fide efforts to rent the lodge in 2018, the outcome here is the same as above: the lodge was not held for the production of income and is not, therefore, eligible for a depreciation deduction in 2018 on that basis.

D.      *Whether Plaintiff May Deduct Depreciation on the Lodge as a "Personal Activity"*

Plaintiff argues that, even if the lodge was not used for a business or income-producing activity in 2018, he is allowed to deduct depreciation based on use in a "personal activity." (Ptf's Reply at 8-9.) In support, he cites Treasury Regulation section 1.167(a)-11(e)(1)(i), which

gives the general definition of "first placed in service."  It states in relevant part:

> "The term 'first placed in service' refers to the time the property is first placed in service by the taxpayer, not to the first time the property is placed in service. Property is first placed in service when first placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, or in a personal activity."

Several cases shed light on the reference to "a personal activity" within the context of the regulation.  In *Hood v. Comm'r*, 55 TCM (CCH) 817 (1988), the court looked to the regulation to determine whether property qualified for a depreciation deduction under the Accelerated Cost Recovery System (ACRS) under IRC section 168, which was only available for assets placed in service after January 1, 1981.  The court found that the property was first placed in service for a personal activity in 1969, when the taxpayers "commenced using the property as their personal residence."  *Id.*  However, the taxpayers were not permitted to deduct depreciation until they converted the property to rental use.  *Id.*  The court relied on taxpayer's first use of the property in 1969 to conclude that taxpayers could not use ACRS to calculate the depreciation deduction. *See also Jumper v. Comm'r,* 61 TCM (CCH) 2026 (1991) (holding the same); *Kay v. Comm'r*, 84 TCM (CCH) 166 (2002) (holding a vehicle could not be depreciated under IRC section 179 in 1998 because section 179 depreciation can only be deducted in the first year the asset was placed in service, and the vehicle was placed in service in 1997 for personal use).

Those cases indicate that a taxpayer's personal use of property may be relevant for purposes of calculating the correct amount of depreciation *once the property is eligible for a depreciation deduction*.  The regulation does not create a deduction for depreciation that does not otherwise exist in the code.  IRC section 167(a) limits depreciation to property used in a "trade or business" or "held for the production of income."  IRC section 262(a) states that "no deduction shall be allowed for personal, living, or family expenses" except as otherwise allowed in the

chapter. Plaintiff has not identified any code provision that allows a depreciation deduction on property dedicated to personal use.

E.    *Additional Tax Years 2013 Through 2020*

Plaintiff asks the court to "retain continuing jurisdiction over this matter until issues arising from any amended returns for 2013 through 2020 have been resolved." (Compl at 3.) Any person may appeal to this court if they are "aggrieved by and affected by an act, omission, order, or determination of * * * [t]he Department of Revenue in its administration of the revenue and tax laws of this state." ORS 305.275(1)(a)(A). Plaintiff appealed Defendant's assessment for the 2018 tax year and is aggrieved by that assessment. Plaintiff has not identified any notices or appealable actions taken by Defendant for any other tax years. If Plaintiff wishes to challenge such actions, Plaintiff must either file a new complaint or seek leave to amend his complaint. Any complaint must show how Plaintiff is aggrieved by an act, order, or omission of Defendant.

### III.  CONCLUSION

Upon careful consideration, the court denies Plaintiff's Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied and Defendant's Motion for Summary Judgment is granted.

Dated this _____ day of April 2022.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE

***This is a <u>dispositive order</u> pursuant to Tax Court Rule – Magistrate Division 16 C(1). The court will issue a decision after waiting 14 days to determine whether there is a dispute about costs and disbursements. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's decision when all issues have been resolved. See TCR-MD 19.***

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT  TC-MD 210354N  11

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on April 7, 2022.*